```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Robert Michael Graves,          :

      Plaintiff,              : Case No. 2:15-cv-2829

   v.                              : CHIEF JUDGE EDMUND A. SARGUS, JR.
                                                      Magistrate Judge Kemp
Commissioner of Social Security,

      Defendant.              :

<u>REPORT AND RECOMMENDATION</u>

I. <u>Introduction</u>

    Plaintiff, Robert Michael Graves, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on August 7, 2012, and alleged that Plaintiff became disabled on March 29, 2012.

    After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on May 15, 2014. In a decision dated June 23, 2014, the ALJ denied benefits. That became the Commissioner's final decision on August 5, 2015, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on November 30, 2015. Plaintiff filed a statement of specific errors on January 12, 2016, to which the Commissioner responded on May 4, 2016. Plaintiff filed a reply brief on May 18, 2016, and the case is now ready to decide.

II. <u>The Lay Testimony at the Administrative Hearings</u>

    Plaintiff, who was 54 years old as of the date of the hearing and who graduated from high school and completed two years of college, testified as follows. His testimony appears at pages 30-60 of the administrative record.

    Plaintiff last worked in early April, 2012. He was a claims adjuster for Nationwide Insurance, and his job included driving

and inspecting damaged vehicles.  He had done that for some number of years, but before that worked as a claims adjuster in an office setting.  The job included dealing with the public.

Plaintiff stopped working when his job became too difficult for him.  His duties could not be performed in a normal workweek because his territory was too large and there was too much driving time.  As a consequence, he lost his motivation, and did not believe he would be reliable in that job.  That feeling was affected by his physical symptoms, which included nausea, diarrhea, vomiting, and frequent urination.  Many of these conditions existed while he was working.  He was receiving disability benefits from his employer based on depression and anxiety.  He did not see a psychiatrist or psychologist, but his family doctor was managing his conditions through medication.

Concerning his physical abilities, Plaintiff testified that prolonged sitting was difficult because he had to get up to stretch his legs or use the restroom.  Walking did cause him to be short of breath, and excessive standing caused his back to hurt.  He was not receiving treatment for his back, however.  He could lift twenty-five pounds occasionally.  Heat and humidity also bothered him.  From a psychological standpoint, he did not like to interact with people and he experienced anxiety and a loss of focus.  He felt helpless and hopeless on a daily basis.  Plaintiff also napped two to four hours every day.

Additionally, Plaintiff's wife testified at the hearing.  She said that Plaintiff's memory was not good and that he spent most of the day watching television.  Even using a riding mower made him short of breath.  His problems began two or three years before and came on suddenly.  (Tr. 60-64).

### III.  The Medical Records

The medical records in this case are found beginning on page 210 of the administrative record.  The pertinent records can be

summarized as follows.

There are some records which predate Plaintiff's alleged onset date, and which show that he underwent bowel surgery in 2008, but the first set of treatment notes from Dr. Tucker, his family physician, are found at Tr. 232-98.  These 66 pages of records show treatment in 2010, 2011, and 2012.  As might be expected, Plaintiff saw Dr. Tucker for a number of different ailments, and also for general checkups.  The last note, dated December 6, 2012, shows diagnoses of chronic depression and anxiety and chronic sinus pressure as well as occasional nausea, and indicates that Plaintiff was taking various medications including Vicodin, Valium, and Wellbutrin.  Plaintiff was described as in no acute distress with an improved affect and mood.  (Tr. 232).  Earlier that year, he told Dr. Tucker that he had not been fired from his job, but that his position was eliminated and he declined an offer to take a similar position in Cincinnati.  Dr. Tucker noted that efforts were being made to get Plaintiff to see a psychiatrist and that Plaintiff was drinking and had alcohol induced gastritis.  (Tr. 234).  Immediately prior to leaving his job, Plaintiff reported that he was thinking about applying for disability because job stress was exacerbating his symptoms.  (Tr. 244).  He had reported anxiety and depression to Dr. Tucker as early as 2010.  (Tr. 282).  He also described a history of depression to doctors during an emergency room admission on December 30, 2011, although he indicated at that time that he was happy with his medications.  He was also resistant to a suggestion that he stop drinking.  (Tr. 338-39).

Dr. Padberg, a clinical psychologist, completed a form on October 19, 2012, for Sedgwick CMS Behavior Health, the company administering Plaintiff's disability insurance from Nationwide Insurance.  Dr. Padberg noted that he had recommended that, starting November 1, 2012, Plaintiff stay home from work due to

-3-

major depression.  He also said that Plaintiff was able to maintain focus and concentration for only five to ten minutes, had a flat affect, had stopped drinking several months before, had expressed suicidal ideation, exhibited symptoms such as "stuttering, no motivation, etc.," and had racing thoughts which interfered with his sleep.  Dr. Padberg rated Plaintiff's GAF at 50 and also indicated that he had not seen Plaintiff until eight days before filling out the report.  (Tr. 326-27).

Dr. Tucker completed a physical capacity assessment form on January 25, 2013.  On that form, he stated that Plaintiff could only sit for four hours in a work day and stand or walk for two.  Also, Plaintiff needed the option to alternate between sitting and standing, could lift up to 20 pounds occasionally and up to ten pounds frequently, and could only occasionally climb, balance, stoop, kneel crouch, and crawl.  He also could not work around unprotected heights and had some other moderate environmental restrictions.  (Tr. 346-47).  Dr. Tucker also completed a form for Sedgwick in 2013, stating on the form that Plaintiff was unable to work and that he suffered from socialization problems, insomnia, and short weekly panic attacks.  Plaintiff could focus and concentrate for 15-30 minutes, however.  The conditions which Dr. Tucker listed on the form were anxiety and gastritis, but he subsequently responded to a letter from Sedgwick indicating that Plaintiff also suffered from depression and it was a disabling impairment as well.  (Tr. 357-60).  Other than a few additional office notes from Dr. Tucker, there are no other pertinent treatment records in the file.

A number of state agency reviewers also expressed opinions about Plaintiff's residual functional capacity.  Dr. Hinzman did not find any exertional limitations but thought that Plaintiff had limited hearing and needed to avoid exposure to excess noise.  (Tr. 81-82).  Dr. Mirvis reached the same conclusion.  (Tr. 95-

97). On the psychological side, Dr. Lewin, a psychologist, said that Plaintiff had a moderate limitation in his ability to deal with detailed instructions, to maintain concentration for extended periods, and to cope with work stress. Those problems could be alleviated by a restriction to 1-3 step work tasks which did not require working at a fast pace or meeting strict time or production demands. He also would be moderately limited in his ability to deal with change in the work setting, but could adjust to infrequent changes in a relatively static work environment. (Tr. 83-84). Dr. Swain, also a psychologist, reached exactly the same conclusion. (Tr. 96-98).

### IV. The Vocational Testimony

Lynne Kaufman was called to testify as a vocational expert at the administrative hearing. Her testimony begins at page 64 of the administrative record.

Ms. Kaufman described Plaintiff's past employment as a claims adjuster (at least when he was working in the field) as a medium strength skilled job as Plaintiff performed it, although it is typically considered a light job. His position prior to that was sedentary and also skilled.

Ms. Kaufman was then asked some questions about someone with Plaintiff's background and who could work at the light exertional level but needed to avoid concentrated exposure to excessive noise, respiratory irritants like smoke and gases, and temperature and humidity extremes. That person was also limited to simple routine tasks that did not require a fast pace or had strict production requirement, and which were performed in an environment where changes would be infrequent. Ms. Kaufman said that someone with those restrictions could not do Plaintiff's past work, but could be employed as an office helper, sorter, or packer.

Next, Ms. Kaufman was asked whether someone who would miss

work two days a month could do those jobs. She said that with the type of jobs she had identified, only one day of absence per month would be tolerated. She also said that someone who had to lie down for an hour or more every day could not be competitively employed.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11-19 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Second, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 29, 2012. Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including chronic obstructive pulmonary disease, arthritis, hearing loss, depression, and generalized anxiety disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform the exertional requirements of light work but that he had to avoid concentrated exposure to excessive noise, respiratory irritants like smoke and gases, and temperature and humidity extremes. Additionally, he was limited to the performance of simple, routine tasks that did not require a fast pace or had strict production requirements, and which were performed in an environment where changes would be infrequent, in a relatively static work environment.

With these restrictions, the ALJ concluded that Plaintiff

could not perform his past relevant work. He could, however, perform the jobs identified by the vocational expert, including office helper, sorter, or packer. The ALJ further determined that these jobs existed in significant numbers in the national economy. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not give proper weight to the opinions of Dr. Tucker; (2) the ALJ did not properly articulate his reasons for rejecting Dr. Tucker's opinions; and (3) the ALJ improperly gave more weight to the opinions of the state agency physicians. These issues are evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human

<u>Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

## A. <u>Dr. Tucker's Opinions</u>
### 1. <u>Articulation</u>

The Court begins with Plaintiff's argument that the ALJ did not properly articulate the reasons why he did not give controlling, or even significant, weight to Dr. Tucker's opinions both as to Plaintiff's physical limitations and his psychological limitations. As always, the appropriate starting point for this analysis is the ALJ's decision.

The ALJ first made the general observation that "[t]he objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described above [i.e. the residual functional capacity finding made by the ALJ]." (Tr. 15). Then, after discussing the state agency medical consultants' opinions, which were given great weight as to some aspects, and dismissing Dr. Padberg's opinion as coming from a one-time examiner, he turned to Dr. Tucker's opinions. In pertinent part, this is what he said:

> The opinion of Kirk Tucker, M.D., the claimant's treating physician, is not given controlling weight because his opinion is not supported by the medical evidence of record. However, his opinion is given some weight, as he is a treating source and the limitations on lifting and carrying, exposure to respiratory irritants, temperature and humidity are accepted and incorporated in the residual functional capacity.... While there is no evidence in Dr. Tucker's clinic (sic) or laboratory findings or other medical evidence of record to support limiting sitting, standing, or walking to only six hours a day, the medical evidence

-8-

> shows that he can be in one position for at least two
> hours, and any need to alternate would be taken care of
> by normal breaks.  Dr. Tucker completed the form on
> January 25 2013, but he had not seen the claimant since
> December 6, 2012, at which time he described the
> claimant as alert, well-appearing and in no acute
> distress, with an overall improved mood and affect ....
> Subsequently, when seen on February 8, 2013, he noted
> that the claimant had only acute, recent complaints....
>
> The opinion by Dr. Tucker indicating that the claimant
> is disabled due to major depression, is given little
> weight, as this statement includes no description of
> any specific limitations or any clinical findings....
> Additionally, this statement seems inconsistent with
> the fact that the claimant has received no mental
> health treatment.  Dr. Tucker's other evaluations from
> July 2013 and January 2014 were fairly normal, except
> for his indication that the claimant can only maintain
> focus and concentration for 15 to 30 minutes.  On the
> other hand, he also noted that the claimant could
> follow three-step commands, perform serial 7's, and had
> normal reasoning and judgment.  Although he stated that
> the claimant has weekly panic attacks, the claimant did
> not complain of this at the hearing.  Further, his
> other positive findings were not reported in his clinic
> notes - in fact, he specifically wrote in his notes
> that the claimant had no panic attacks ....  Therefore,
> these opinions are given little weight.

(Tr. 15-16).

The law concerning an ALJ's duty to articulate the reasons for declining to give controlling weight to the opinion of a treating source, and for deciding what weight to give such an opinion, is well-established in this Circuit.  Pursuant to 20 C.F.R. §404.1527(c) (a regulation that mandates that an ALJ give "good reasons ... for the weight [assigned to] your treating source's opinion"), the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight.  Two reasons underlie this procedural requirement.  First, it assists the claimant to understand why the Commissioner has concluded, contrary to what

-9-

the claimant has been told by his or her treating doctor, that the claimant is not disabled.  Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way.  See, e.g., Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record. Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  Id. at 243, citing Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).  Further, under Wilson, the failure of an ALJ to articulate sufficiently the basis of his decision as it relates to treating source opinions is rarely harmless error, and can be considered so only "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it...." Id. at 547.

As the Court understands Plaintiff's arguments on this point, Plaintiff is not actually asserting that the reasons given by the ALJ were too vague or conclusory to permit this Court to review them.  Rather, Plaintiff seems to concede that the ALJ stated the reasons for his decision adequately, but contends that the reasons given were not the "good reasons" required under §404.1527(c).  As Plaintiff's statement of errors characterizes this argument, the reasons given by the ALJ "do not rise to the level of substantial evidence to discredit a treating source opinion."  See Doc. 9, at 10.  Whether the ALJ has adequately

stated the reasons for discounting a treating source opinion, and whether those reasons enjoy substantial support in the record, are distinct inquiries.  The Court finds no articulation error here, and will therefore proceed to the issue of whether the ALJ's evaluation of Dr. Tucker's various opinions is supported by substantial evidence.

2.  <u>Support for the ALJ's Decision</u>

Plaintiff raises the following points about the sufficiency of the ALJ's reasoning process.  He asserts that the ALJ did not specifically acknowledge the length of the treating relationship or the fact that Dr. Tucker had access to reports from various referral physicians as well as to his own observations. Plaintiff also contends that the ALJ's few citations to treatment notes are insufficient to support the conclusion that those notes did not support Dr. Tucker's findings, and that Dr. Tucker's conclusions were actually consistent with the balance of the medical records, including the report from Dr. Padberg.  He also asserts that nothing in the record supports the ALJ's conclusion that Plaintiff could sit for at least two hours at a time and that the short lapse of time between Plaintiff's last visit to Dr. Tucker and the date Dr. Tucker expressed his opinions is an insufficient basis on which to discount those opinions.

In response, the Commissioner argues that the ALJ properly relied upon the fact that Dr. Tucker offered no specific support for his conclusions about certain of Plaintiff's physical capabilities, including, specifically, his conclusion that Plaintiff could not sit, stand, and walk for a total of eight hours during a work day.  Additionally, the Commissioner claims that the ALJ correctly gave little weight to Dr. Tucker's views about Plaintiff's mental functional capacity, noting that Dr. Tucker did not provide a description of specific limitations, cited no supporting evidence, and did not show, in his treatment notes, that Plaintiff had significant limitations.  Also, the

-11-

Commissioner points out that the ALJ correctly noted that Plaintiff had never obtained mental health treatment from anyone other than Dr. Tucker, and that there were inconsistencies between Dr. Tucker's reports and his notes. According to the Commissioner, this is one of those cases where the ALJ had a "zone of choice" concerning how much weight to give to the treating source opinions and exercised that choice within that range of discretion.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). The ultimate question is whether the ALJ's decision to discount a treating source opinion finds substantial support in the record. See Smith v. Comm'r of Social Security, 482 F.3d 873, 877 (6th Cir. 2007)(upholding an ALJ's decision about treating source opinions "[b]ecause substantial evidence supports the ALJ's rejection of these reports ...").

Here, the Court finds the Commissioner's arguments to be the more persuasive. First, it is difficult to determine exactly which of Plaintiff's conditions, or which of his reported or

observed symptoms, correlate with Dr. Tucker's physical capacity evaluation. Other than his arthritis, which was being treated conservatively, there do not seem to be any physical impairments which would have any impact on Plaintiff's ability to sit for more than four total hours in a work day, or to stand or walk for more than two total hours. More importantly, Dr. Tucker did not identify, in his notes or on the form he completed, what impairments he believed were causing these types of limitations. That is exactly what the ALJ said when he noted that "there is no evidence in Dr. Tucker's clinic (sic) or laboratory findings ... to support limiting sitting, standing, and walking to only six hours a day ...." (Tr. 16). That is a valid reason under §404.1527(c) for rejecting a treating source opinion, and it undercuts Plaintiff's claim that the ALJ did not explain why he chose to credit part of Dr. Tucker's evaluation of Plaintiff's physical capacity and not other parts. Given that no other physician concluded that Plaintiff could not do a limited range of light work, and that the state agency reviewers believed that he could (in fact, they did not see anything in the medical records suggesting any exertional limitations), the ALJ did not err in his treatment of that portion of Dr. Tucker's opinion – nor did he err in not reciting all of the pertinent factors set forth in §404.1527(c). See Francis v. Comm'r of Social Security, 414 F. App'x 802, 804 (6th Cir. 2011).

    As to the ALJ's mental residual functional capacity evaluation, and his rejection of Dr. Tucker's opinion about Plaintiff's ability to maintain attention and concentration, again, the ALJ properly noticed the absence of any supporting clinical findings. The lack of such support, and fairly normal results of testing, are all reasons an ALJ might decide to give less weight to the opinion of a treating source, especially where, as here, Dr. Tucker is not a mental health professional and Plaintiff never sought treatment from one. Cf. Moore v.

Comm'r of Social Security, 2015 WL 4399787, *6 (S.D. Ohio July 17, 2015), adopted and affirmed 2015 WL 5749464 (S.D. Ohio Sept. 30, 2015)(explaining that an ALJ properly discounted an opinion as to mental limitations based on the fact that the claimant "did not seek treatment from a mental health professional for a long period of time ..."). The ALJ also afforded significant weight to the opinions of the reviewing psychologists, a subject more fully discussed in the next section, and those opinions were consistent with Plaintiff's having the mental capacity to do work in a restricted environment which accommodated both concentration and pace limitations. For these reasons, the Court finds no error in the way that the ALJ evaluated either of Dr. Tucker's opinions.

B.  The State Agency Opinions

Plaintiff's other argument is that the ALJ gave improper weight to the opinions of the state agency reviewers - primarily the psychological reviewers, since the ALJ found Plaintiff to be substantially more limited than did the state agency physical reviewers. Plaintiff asserts that the ALJ failed to explain why he credited those opinions when he was quick to discount the views of both Dr. Tucker and Dr. Padberg, and that the opinions themselves do no more than refer to the totality of the evidence in explaining why those reviewers found that Plaintiff was able to work in certain types of work environments despite his limitations.

To the extent that Plaintiff is arguing that the ALJ failed to articulate adequate reasons for adopting the opinions of state agency physicians, that argument fails. The "'good reasons' requirement [in §404.1527(c)] applies only to treating sources." Hackle v. Comm'r of Social Security, 2013 WL 618630, *6 (S.D. Ohio Feb. 19, 2013), adopted and affirmed 2013 WL 1412189 (S.D. Ohio Apr. 8, 2013), citing Smith v. Comm'r of Social Security, 482 F.3d 873, 876 (6th Cir. 2007). Further, the record,

especially the reasons provided by the ALJ for giving less weight to Dr. Tucker's opinions as to Plaintiff's mental limitations, contains substantial support for the ALJ's decision. See Elliott v. Astrue, 2010 WL 456783, *7 (E.D. Ky. Feb. 3, 2010)("ALJ did not err in giving [state agency physicians' opinions] appropriate weight" where those opinions "were supported by the record..."). That is the case here. Consequently, the ALJ did not err when he credited the opinions of the state agency psychologists.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d

947 (6th Cir. 1981).

                                                          /s/ Terence P. Kemp
                                                          United States Magistrate Judge